GRELLAS SHAH LLP
DHAIVAT H. SHAH, ESQ. (SBN 196382)
(ds@grellas.com)
DAVID I. SIEGEL, ESQ. (SBN 264247)
(dsiegel@grellas.com)
ERIN M. ADRIAN, ESQ. (SBN 228718)
(ema@grellas.com)
20400 Stevens Creek Blvd, Suite 280
Cupertino, CA  95014
Telephone: (408) 255-6310
Facsimile: (408) 255-6350

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MATTHEW THIER, an individual, and TRAVIS DEITZ, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PURISM, SPC, a Washington Social Purpose Corporation<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**Class Action** |

Plaintiffs MATTHEW THIER ("THIER"), and TRAVIS DEITZ ("DEITZ" and, together with THIER, "plaintiffs") by and through their undersigned counsel, hereby file this Class Action Complaint, individually and on behalf of all others similarly situated, and allege against Defendant, Purism SPC ("Purism" or "Defendant"), as follows:

## I. INTRODUCTION

1. Purism is a technology company based in the San Francisco Bay Area that has consistently touted itself as a champion of software freedom, computer security and Internet privacy. In addition to selling a suite of hardware products, Purism also maintains PureOS, which it advertises as a "fully-free, ethical and open source operating system that is not based on Android or iOS," as well as LibremOne, a suite of software as a service based on open source.

2. Purism was founded in 2014 and launched with a crowdfunding campaign to attempt to launch an Intel-based high-end laptop with almost no proprietary software and various security features. The laptops would ship with Purism's PureOS operating system.

3. In 2017, Purism began taking pre-orders for its proposed Librem 5 smartphone. The Librem 5 was advertised as a "security and privacy focused" phone that was supposed to run on PureOS and was supposed to contain hardware "kill switches" that physically disabled WiFi, Bluetooth, cellular signal, microphone and camera.

4. Purism offered its pre-order customers a rock-solid refund policy that they could get their money back for any reason if they changed their minds and requested a refund prior to the time that Purism shipped their Librem 5 phone.

5. Though it would seem that Purism was wildly successful at describing the phone it hoped to develop and in collecting pre-order monies from hopeful customers, its actual production of the phones was not on the timeline expected. Customers waited year after year for delivery of their phones. As each new customer pre-ordered a Librem 5 phone and paid for the phone, they were placed on a "shipping que" to have their phone shipped after Purism manufactured it. It was not until September 24, 2019, that Purism announced that the first Librem 5s had started shipping to pre-order customers.

6. As the years passed, customers that failed to receive their Librem 5 phones began cancelling their pre-orders and invoking Purism's refund policy to demand their monies back. When it received these requests, Purism followed a set playbook. First, it would acknowledge the obligation to provide a refund but would say that refunds would be processed when all pre-order shipments to other customers had occurred. After years of offering that excuse, Purism would abruptly state that no refunds would be made.

7. In essence, Purism has had the use of its pre-order customer funds, interest-free, for years and received these funds with the assurance that its pre-order customers had an absolute right to cancel with a full refund. When it came time to honor its agreement, Purism reneged.

## II. VENUE AND JURISDICTION

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because this action is filed as a class action under Federal Rules of Civil Procedure 23 and the aggregate amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and the named plaintiff, and a substantial number of class members are citizens of a state different than Purism.

9. Venue is proper in this district and division under 28 USC § 1391(a) because a substantial part of the events and omissions giving rise to the claims asserted herein occurred in this judicial district.

10. Defendant is subject to personal jurisdiction in the State of California because it maintains continuous and systematic contacts with the State of California because it has its headquarters in San Francisco, California, and from its headquarters directed unlawful acts and omissions both within California and nationwide. Plaintiffs' claims arise from these acts.

11. Under Local Rules 3-2(c) and 3-5(b), a substantial part of the events and omissions giving rise to the claims asserted herein occurred in San Francisco County, because this was the county where Purism maintains its headquarters and from where plaintiffs and other class members were exposed to the unlawful conduct alleged herein. This action should therefore be assigned to the San Francisco Division.

### III.   PARTIES

12.    Plaintiff Thier is an individual more than 18 years old, and is a citizen of the State of Michigan who resides in the city of Hamilton.  He respectfully requests a jury trial on damage claims.

   a. On October 8, 2019, Thier pre-ordered a Librem 5 phone from Purism for $699 and paid that amount in full.

   b. At the time that Thier made his purchase, Purism's stated refund policy was that customers that cancelled their orders were entitled to a full refund.

   c. On November 14, 2019, Purism emailed Thier and represented that Purism's estimated shipping time was March 31, 2020.

   d. By November 4, 2020, Thier still had not received his Librem 5 phone.

   e. On November 4, 2020, Thier emailed Purism to cancel his Librem 5 order and request a refund.

   f. On November 5, 2020, João Azevedo of Purism responded as follows: "We can refund your order, but not immediately." He also added, "all funds are now locked in place and we are unable to process refunds until all pre-ordered devices have been shipped to customers."

   g. Thier was reassured that Purism was acknowledging the obligation to pay a full refund and reasonably believed Purism's assurances that it would pay a refund in not taking legal action sooner.

   h. Over the coming years, Thier sent a number of requests to Purism for an update on when he would receive his refund.  Purism would offer assurances that a refund would be made in the future.

   i. On February 8, 2023, in response to yet another request from Thier for his refund, Mr. Azevedo offered a new explanation:  ""We can only refund your order when we reach your place in the shipping queue. Currently we are shipping pre-orders from February 2019. Your order is from October 2019."  Thier understood this email to mean that Purism would only refund his money at the time that he would

otherwise have received his Librem 5 phone had he not cancelled.

j. On February 9, 2023, Thier emailed Purism to ask when his shipping date would be.

k. On February 10, 2023, Mr. Azevedo responded: ""We are trying to accelerate the shipping rate at this moment, but we cannot give such an exact date. it is possible that it is in less than 4 months."

l. On September 7, 2023, Purism Investor Relations sent an email to Thier that it was "proud to announce" that it had reached "shipping parity" with the Librem 5, *i.e.*, that it had shipped all pre-orders and was now stocking Librem 5s to fulfill new orders.

m. On September 14, 2023, Thier again emailed Purism and requested an update on his refund.

n. On September 18, 2023, Mr. Azevedo responded: ""Sadly, we do not process any refunds at the moment" and "As I do not have any timeline for the refund all the information I currently have indication it will not be processed any time soon."

o. As of the time of this filing, Thier still have not received his refund.

13. Plaintiff Deitz is an individual more than 18 years old, and is a citizen of the State of North Carolina who resides in the city of Wilmington. He respectfully requests a jury trial on damage claims.

a. Deitz pre-ordered a Librem 5 phone from Purism on January 19, 2020, for $749. He opted for monthly payments of his purchase price and timely paid in full.

b. At the time that Deitz made his purchase, Purism's stated refund policy was that customers cancelling their orders prior to shipment of their Librem 5 phones would receive a full refund.

c. By August 23, 2020, Deitz had still not received his Librem 5 phone. On that date, he emailed Purism to cancel his order and request his refund.

d. On August 27, 2020, Purism emailed to acknowledge Deitz's refund request but stated that refunds would only be processed after all pre-orders had shipped.

e. Although Purism was not paying his refund immediately, Deitz was reassured that Purism was acknowledging the obligation to pay the refund, albeit once pre-orders had shipped. Deitz reasonably relied on Purism's assurances in not taking legal action sooner.

f. Over the coming years, Deitz sent follow-up requests but no refund was paid. He received only assurances that a refund would be paid once all pre-orders were fulfilled.

g. On August 1, 2023, in response to one of Deitz's inquiries, a Purism representative emailed that Purism could offer to ship Deitz a Librem 5 phone or to give him a store credit with an additional 20% value.

h. Deitz responded the same day and insisted that he receive his refund.

i. The Purism representative responded that it was Purism policy not to offer refunds on pre-orders.

j. On August 2, 2023, Deitz responded by sending Purism a copy of a screenshot of the Purism refund policy as reflected on the Purism website at the time of his purchase and insisted that Purism comply with the published policy's offer of a full refund.

k. A Purism representative responded on the same day that he would need to check with "legal" and would respond shortly.

l. On August 15, 2023, the same Purism representative emailed Deitz and wrote that he still had not yet heard from Purism legal but that no refunds were being processed at the time and requested patience.

m. Since that time, Deitz had made several other follow up requests to inquire of his refund but has received no response. As of the date of this filing, Deitz has not received his refund.

14. Defendant Purism is a Special Purpose Corporation organized and existing under the laws of the State of Washington, with its headquarters and primary place of business in the State of California, in San Francisco.

## IV. GENERAL ALLEGATIONS

15. All allegations herein are based on information and belief and/or are likely to have evidentiary support after reasonable opportunity for further investigation and discovery.

16. Purism published refund policies that customers pre-ordering Librem 5 phones could cancel at any time prior to the date that their phones shipped and would receive a full refund.

17. Yet when customers cancelled their orders, Purism failed to refund their monies.

18. Plaintiff therefore brings this class action to secure, among other things, actual damages for the Classes for breach of contract arising from Purism's failure to comply with its refund policies.

19. Plaintiffs and other purchasers of the Librem 5 have suffered injury in fact and have lost money as a result of Purism's breach of contract.

## V. FACTUAL ALLEGATIONS

20. On August 24, 2017, Purism announced its plans to build its Librem 5 phone, which it described as "the world's first encrypted, open platform smartphone that will empower users to protect their digital identity in an increasingly unsafe mobile world."

21. Purism began a 60-day crowdfunding campaign on that day with a stated goal of raising over $1.5 million to assess demand for the Librem 5 and to raise funds for development of the phone.

22. On October 24, 2017, Purism announced that the campaign was complete and that Purism had met and exceeded its funding goals. At this time, Purism began taking additional pre-orders for the Librem 5. Given that the Librem 5 phones were still in the design and development process, Purism was unable to immediately fulfill pre-orders at the time they were made. Rather, pre-order customers would be placed in a shipping que and would receive their Librem 5 once available.

23. From August 24, 2017, to March 9, 2020, customers that pre-ordered Librem 5 phones were shown a published policy that: "If, for any reason, you want to cancel your order

before it was shipped, we will issue a full refund."

24. On or around March 10, 2020, Purism modified its published return policy to state as follows: "If, for any reason, you want to cancel your order before it was shipped, we will issue a full refund. . . . If you want to cancel an order for products that are in the process of crowdfunding or pre-order, we will issue a full refund once the crowdfunding/pre-order of the product is completed and all pre-orders are shipped."

25. On or around March 24, 2020, Purism modified its published return policy to state as follows: "If, for any reason, you want to cancel your order before it was shipped, we will issue a full refund. . . . If you want to draw funds from any product that you: crowdfund, back, pre-order, early purchase, pre-purchase: when your pre-order is reached in the shipping queue you can decide whether to have it shipped or opt for some other option."

26. On or around May 10, 2023, Purism modified its website to discontinue its full refund policy.

27. On August 29, 2023, Purism published a blog post on its website entitled "Can I get a refund on my Librem 5 campaign order." This blog post stated that there was "confusion" related to Purism's Librem 5 refund policy. The blog post stated that Purism did not believe it was required to honor any Librem 5 refund requests and would not do so in the future, thereby repudiating its contractual obligation to make refunds per its stated policies at the time of purchase.

28. Purism failed to comply with refund requests by customers that pre-ordered their Librem 5 phones at a time that Purism was offering a full refund policy and that cancelled their orders prior to shipment of their Librem 5 phones.

29. It is apparent that the experience of the Plaintiffs was not isolated but that it reflected a coordinated and uniform strategy and procedure by Purism to renege on its refund obligations. In each instance, just as with the Plaintiffs, Purism would respond to a customer cancellation and refund request by acknowledging its refund obligation and explaining that the refund would be made in the future when all other pre-orders had shipped. This would be followed by years of similar excuses designed to lull the customer into inaction. Until, finally,

Purism would state that it did not intend to make a refund. A brief Internet search regarding Purism's failure to refund cancelled pre-orders for the Librem 5 phone yields dozens of entries, each containing accounts of numerous customers experiencing this uniform course of conduct. Here are a representative sample of website pages containing such accounts: 1) https://forums.puri.sm/t/estimate-your-librem-5-refund/16227/37; 2) https://forums.puri.sm/t/has-purism-refunded-you-is-purism-going-insolvent/18953/6?page=6; 3) https://discuss.techlore.tech/t/purism-is-no-longer-offering-previously-promised-refunds-for-librem-5/6027; 4) https://www.reddit.com/r/Purism/comments/135w4dq/no_refund_from_purism/; 5) https://www.toomanyatoms.com/computer/librem_trainwreck.html; 6) https://news.ycombinator.com/item?id=29308410.

30. Purism's failure to comply with its refund policy is a breach of its contractual commitment to its customers.

31. Plaintiffs and the Classes have suffered injury in fact and have lost money as a proximate result of Purism's breaches of contract.

## VI.    CLASS ACTION ALLEGATIONS

32. Plaintiffs bring this proposed action on behalf of themselves and, under Rule 23 subdivisions (a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following National Class, California Class, Michigan Class, and North Carolina Class (collectively, the "Classes"):

National Class:

**all persons in the United States who pre-ordered the Librem 5 phone during the Class Period ("National Class"), which is defined as the period between from August 24, 2017, through August 28, 2023, that requested a refund prior to shipment of their Librem 5, and did not receive a full refund**

California Class:

**all persons in California who pre-ordered the Librem 5 phone during the Class Period ("California Class"), which is defined as the period between from August 24, 2017, through August 28, 2023, that requested a refund prior to shipment of their Librem 5, and did not receive a full refund**

Michigan Class:

**all persons in Michigan who pre-ordered the Librem 5 phone during the Class Period ("Michigan Class"), which is defined as the period between from August 24, 2017, through August 28, 2023, that requested a refund prior to shipment of their Librem 5, and did not receive a full refund**

North Carolina Class:

**all persons in North Carolina who pre-ordered the Librem 5 phone during the Class Period ("North Carolina Class"), which is defined as the period between from August 24, 2017, through August 28, 2023, that requested a refund prior to shipment of their Librem 5, and did not receive a full refund**

33. Excluded from the Classes are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Classes is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

34. Plaintiffs reserve the right to amend or modify the class description by making it more specific or dividing the class members into subclasses or limiting the issues.

35. <u>NUMEROSITY</u>: Plaintiffs are informed and believe, and on that basis allege, that the Classes are so numerous that individual joinder of all members would be impracticable. The number of purchasers of the Librem 5 during the Class Period is so large as to make joinder impossible as the Classes are comprised of tens of thousands of consumers geographically dispersed throughout the United States. While the exact number of Class members is currently unknown, such information can be ascertained though appropriate discovery.

36. This action may appropriately proceed as a class action because Plaintiffs will prove the elements of the damages claims with predominantly common evidence.

37. <u>COMMONALITY</u>: Defendant's practices and omissions were applied uniformly to all members of the Classes, so that the questions of law and fact are common to all members of the Classes. All members of the putative Classes were and are similarly affected by having purchased the Librem 5 under similar refund policies, and having Purism

fail to honor its refund policies. The relief sought herein for the benefit of Classes predominates over questions affecting only individual members, including, inter alia, whether defendant stated its refund policies in failing to provide full refunds to pre-order customers that cancelled their orders prior to shipment of their Librem 5 phones.

38. <u>TYPICALITY</u>: The claims asserted by Plaintiffs are typical of the claims of the members of the Classes, as the claims arise from the same course of conduct by Defendant, all members of the Classes have been similarly affected by Defendant's course of conduct, and the relief sought in common.

39. <u>ADEQUACY</u>: Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiff has no interest adverse to the interests of the other Class members. Plaintiff has retained competent counsel with substantial experience in both consumer protection and class action litigation, who are committed to vigorously prosecuting this action on behalf of the class.

40. <u>SUPERIORITY</u>: A class action is superior to other available methods for the fair and efficient adjudication of the present controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, are far superior that any difficulties that might be argued with regard to the management of this class action. This superiority makes class litigation superior to any other method available for the unfair and efficient adjudication of these claims. Absent a class action, it would be highly unlikely that the representative Plaintiffs or any other members of the Classes would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

41. Certification of this class action because the questions of law or fact common to the respective members of the Classes predominate over questions of law or fact affecting only

individual members. Certification also is appropriate because Defendant acted, or refused to act, on grounds generally applicable to the Classes, thereby making appropriate the relief sought on behalf of the Classes as a whole. Further, given the large number of consumers affected, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

## FIRST COUNT:

## BREACH OF CONTRACT

## (ON BEHALF OF PLAINTIFF AND THE NATIONAL, CALIFORNIA, MICHIGAN AND NORTH CAROLINA CLASSES)

42. Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs 1-41 of this Complaint.

43. Plaintiff, and each member of the National, California, Michigan and North Carolina Classes, formed a contract with Defendant at the time Plaintiff and the other members of the Classes pre-ordered the Librem 5 phone.

44. The terms of that contract include the published refund policy that any customer pre-ordered a Librem 5 phone is entitled to a full refund if they cancel their order prior to shipment of their phone.

45. All conditions precedent to Defendant's liability under this contract, have been performed by Plaintiff and the Classes.

46. Defendant breached the terms of this contract by failing to comply with its refund obligations under the contract.

47. As a result of Defendant's breach of its contract, Plaintiffs and the Classes have been damaged in an amount to be proven at trial.

## **PRAYER**

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes, pray for judgment in their favor against defendants as follows:

1. For an order certifying that this action may be maintained as a class action, certifying

plaintiffs as representatives of the Classes, and designating their attorneys Class counsel to the Classes.

2. For general and special damages in an amount to be proven at trial;

3. For pre-judgment and post-judgment interest; and

4. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims asserted herein.

Respectfully submitted,

Dated: December 12, 2024        GRELLAS SHAH LLP


By: */s/ Dhaivat H. Shah*
    Dhaivat H. Shah, Esq.
    Attorneys for Plaintiffs